Ivens Sherr v. Commissioner.
Sherr v. Commissioner
Docket No. 27180.
United States Tax Court
1951 Tax Ct. Memo LEXIS 159; 10 T.C.M. (CCH) 671; T.C.M. (RIA) 51218; July 16, 1951
*159 Petitioner made two gifts, each consisting of a large number of shares of stock in a corporation. Respondent determined a value of $8 per share as computed from market quotations and over-the-counter transactions. Petitioner contends their value was $5 per share, for the blocks of stock could not be sold by skilled brokers at the same price as small lots within a reasonable time from the date of gift. Held, the per share value of the stock was $7. As a factor to be weighed, along with the other facts, is the testimony of witnesses as to amount that would be realized from the sale of the blocks of stock. Helvering v. Maytag, 125 Fed. (2d) 55. Samuel Silverman, Esq., and David S. Pollock, Esq., 50 E. 42nd St., New York, N. Y., for the petitioner. William E. Murray, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The Commissioner has determined a deficiency of $12,236.63 in the gift tax of petitioner for the calendar year 1946. Several assignments of error were made by petitioner but at the hearing he narrowed the issues to the following items contained in the petition: "a) The Commissioner has erroneously determined *160 that the value at the date of gift of 9,000 shares of common stock of Fownes Brothers & Co., Inc. made by petitioner to his son-in-law, Milton Gluckman was $72,000.00 instead of as reported on the gift tax return filed by Petitioner at $45,000.00. "b) The Commissioner has erroneously determined that the value of the date of gift of 5,000 shares of common stock of Fownes Brothers & Co., Inc. made by Petitioner to his daughter, Gladys Gluckman was $40,000.00 instead of as reported on the gift tax return filed by Petitioner at $25,000.00." Petitioner no longer contests the other adjustments increasing petitioner's gift tax for the year 1946 as set forth in respondent's deficiency notice. The only issue in the instant proceeding is the value of the two gifts made by petitioner on December 20, 1946. Findings of Fact The facts which have been stipulated are so found. Petitioner is an individual residing in New York City. His gift tax return for the calendar year 1946 was filed with the Collector of Internal Revenue for the Third District of New York. On December 20, 1946, petitioner made a gift to his son-in-law, Milton Gluckman, of 9,000 shares of the $1 par value common stock *161 of Fownes Brothers & Co., Inc. This gift was reported in Schedule A of petitioner's gift tax return at the value of $5 per share, or $45,000. Respondent determined a value of $72,000 on the date of gift. On the same day, December 20, 1946, petitioner made a gift to his daughter, Gladys Gluckman, of 5,000 shares of the $1 par value common stock of Fownes Brothers & Co., Inc. Petitioner's gift to his daughter was reported in Schedule A of his gift tax return at the value of $5 per share, or $25,000. Respondent determined their value on the date of gift to be $40,000. Fownes Brothers & Co., Inc., hereinafter referred to as the Company, was incorporated in 1921 to carry on in the United States the glove business of Fownes Brothers & Company of London, England. Petitioner acquired the controlling interest in the Company in 1936 from Fownes Brothers & Company, an English partnership, and from members of the Fownes family. The stock of the Company was very closely held until 1946 The Company was and is engaged in the business of manufacturing, buying, selling, and dealing in men's, women's, and children's gloves and related accessories. The Company's manufacturing is devoted primarily *162 to fabric and leather gloves, and its gloves are sold under the well-known trade name of "Fownes Gloves". Petitioner and his son were the only directors of the Company and the Company's officers were petitioner, petitioner's son, and petitioner's son-in-law. The Company was recapitalized in September 1946, and thereafter the capitalization was as follows: Title of Class
Authorized
Outstanding
Capital Stock, Par
Value $1
500,000
300,000
Warrants
35,000
35,000 All of the warrants and shares of stock were held by petitioner and his son, but all the warrants were sold in October 1946 as a part of an underwriting of Company stock. Petitioner and his son contracted with Van Alstyne, Noel & Co., a partnership engaged in business as stockholders and underwriters, for the broker to underwrite the sale of 100,000 shares of their stock in the Company. The underwriter purchased the 100,000 shares of stock for $8.50 per share and sold them at $9.50 per share. The underwriters sold 58,797 shares through a syndicate made up of other listed brokers, and the remainder of the shares the underwriter sold to its own customers. The underwriter also purchased from petitioner *163 and his son for 10 cents each the 35,000 warrants entitling the holder of each warrant to subscribe to one share of the Company stock at $9.50. In connection with the sale of 100,000 shares of Company stock by petitioner and his son expenses of approximately $25,000 were incurred. The stockholdings of petitioner and his son in the Company during 1946 and prior to the gifts on December 20, 1946, were substantially as follows: Percentage of
Number of
Shares
Outstanding
Shares Owned
Sold to
Shares
Stock Held After
Name
10/1/46 [1]
Underwriters
Retained
Underwriting
Ivens Sherr, Petitioner
225,001.5
75,000
150,001.5
50%  A. I. Sherr
74,998.5
25,000
49,998.5
16.7%
Prior to the offering of Company stock by the underwriter, there was no market for the stock. The offering began on or about October 25, 1946, and it was continued for a month which was considered a long period of time. The marketing of the stock was slow due to the price of $9.50 per share, which price was arrived at before a general decline in market prices that took place just before the offering. *164 The Company stock during 1946 was unlisted, and was traded in over the counter only. In line with an underwriter's customary practice, Van Alstyne, Noel & Co. formed a stabilization account to stabilize the price of the shares during the offering. Through this account 3,590 shares were repurchased by the underwriter and resold to purchasers closely connected with petitioner for $9.50 per share. We have examined the successive yearend balance sheets of the Company and have considered them, though incorporated herein only by reference. The Company had no fixed debt, its net worth being made up entirely of capital stock, capital surplus, and earned surplus at the time of the gift and at December 31, 1946. It was stipulated that "the book value of a share of stock of said company at December 31, 1946 equaled $4.74." This stipulated book value includes good will per books of 38 cents per share, and does not include declared but unpaid dividends of 15 cents per share. The Company's earnings per share (on the basis of 300,000 shares) were as follows: Year
Earnings
Dividends
1936
[.34)
1937
.03
1938
.05
1939
.15
1940
.15
1941
.21
1942
.16
1943
.14
1944
.36
1945
.39
1946
1.67
1947
1.35
.60
1948
.96
.40
1949
.50
.40
*165 There is no indication in the record as to the total sales each day of the Company's stock over the counter during the days near the date of gift. We do have the records of one broker, Van Alstyne, Noel & Co., who traded in Company stock, including the dates, prices, and number of shares purchased or sold during the period November 27, 1946 through January 29, 1947. During this period the broker's high and low prices of actual sales were as follows: Purchases
Sales
High
8 1/2
8 3/4
Low
7 1/2
7 3/4 During this period the broker purchased 2,509 shares of Company stock and sold 2,680 shares. Most of the purchases were made at the price of 7 3/4 or 8 and most of the sales were at 7 3/4, 8, or 8 1/4 per share. Most of the sales were in 100-share lots, but a few odd-lot transactions and a few greater than 100-share lot transactions were made. During this period the broker's average purchase price was $7.93 per share while his average sale price was $8.28 per share. The broker made the following purchases and sales immediately preceding and following December 20, 1946: Date
Bought
Sold
Price
December 19
100
8
December 20
15
8
December 24
100
8 1/4
*166 Price quotations for the Company stock for 30 days previous and 30 days subsequent to date of gift were compiled by National Quotations Bureau and the compilation is in the record as an exhibit. A summary of high and low quotations follows: During month previous to gift Date
Wants
Offers
12/20/46
Low
7 3/4
8 1/4
11/20/46
High
9 1/4
10
During month following date of gift Date
Wants
Offers
12/23/46
Low
7 1/2
7 3/4
1/17/46
High
8 1/4
1/ 3/47
High
8 1/2
The securities market was temporarily depressed at the time of petitioner's gift in comparison with general market prices of stock at the time the underwriting contract was entered into. It is determined that the value at the date of gift of 9,000 shares of Company stock made by petitioner to his son-in-law, Milton Gluckman, was $63,000, or $7 per share. It is determined that the value at the date of gift of 5,000 shares of Company stock made by petitioner to his daughter, Gladys Gluckman, was $35,000, or $7 per share. Opinion BLACK, Judge: Petitioner made two gifts on December 20, 1946: one gift consisted of 9,000 shares of stock of Fownes Brothers *167 & Co., Inc., representing three per cent of the outstanding shares of stock and which were valued at $45,000 on petitioner's gift tax return; and the other gift consisted of 5,000 shares of stock of Fownes Brothers & Co., Inc., or 1 2/3 per cent of the outstanding shares of stock which were valued at $25,000 by petitioner in his gift tax return. For these gifts respondent determined values of $72,000 and $40,000, respectively. The sole issue to be determined in this proceeding is the value of the two blocks of stock. In their briefs the parties discussed at length the numerous cases relating to the blockage theory of valuation, which principle has been recognized by the courts. Paul, Federal Estate and Gift Taxation, Vol. II, section 18.27. The nature of the problems of determining the value of shares of stock was explained in , affirming Memorandum Opinion of the Board of Tax Appeals as follows: "It is conceded that the question of value is a question of fact and the findings which the Board made upon the issue of value is not reviewable here if the values found are supported by substantial evidence. 'But the question of *168 what criterion should be employed for determining the "value" of the gifts is a question of law'. . * * *" The Court of Appeals for the Eighth Circuit later in the opinion considered the blockage theory of valuation, saying: "* * * As well as any controverted question of administrative law may be settled without declaration by the Supreme Court, it is established that the size of a block of listed stock may be a factor to be considered in its valuation for gift or estate tax purposes. Where, as in this case, the taxpayer affirmatively shows that a block of listed stock to be valued is very great in comparison with the amounts of the stock which have been traded in on the exchange where it is listed, that the block of stock could not be sold on such market at its quoted prices within a reasonable time by skilled brokers following prudent practices for liquidation and that the true value of the block of stock is in fact different from the price quotations, then the taxpayer is entitled to have all other proper evidence of the value of the block of stock considered together with the market quotations. *169 * * *" In accordance with this statement of the law, we have determined the value of the two blocks of stock given away by petitioner only after carefully considering the history of the Company, the ability of its management, and the nature of business in which the Company is engaged. We have considered also the past earnings record of the Company, its prospects for future earnings, its balance sheets, and the book value of its shares of stock. We have studied the market price quotations of the shares and the actual prices of shares traded in the over-the-counter market, and we have considered the volume of trading in Company stock near the date of gift, and also the general conditions of the securities market prevailing at that time. We have duly noted the price received by petitioner and his son from the sale through underwriting of a large block of Company stock, with due weight being given to the resistance of the purchasing public to the offering price of $9.50 per share and to the change in market conditions during the interval between the public offering of the stock and the date of the gifts. We have considered as a factor in our determination of value the testimony of petitioner's *170 witnesses who, as experienced stockbrokers, gave their opinion as to what price might be received from the sale of the blocks of stock on the date of gift, or within a reasonable time thereafter. After a consideration of facts enumerated, and all the others adduced at the hearing, we have determined for the gifts at issue in this proceeding a value of $63,000 and a value of $35,000. Decision will be entered under Rule 50. Footnotes
1. Constituting all outstanding shares of the Company.↩